OPINION
{¶ 1} Plaintiff-appellant ("plaintiff"), Connie Harrod, administrator of the estate of William Harrod, appeals from a judgment of the Franklin County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, Travelers Indemnity Company of Illinois ("Travelers").[1] Because we find no reversible error, we affirm.
 {¶ 2} On January 7, 1997, William Harrod was injured in a motor vehicle accident with Lance R. Doles in Harrison Township, Vinton County, Ohio. William Harrod died from injuries he sustained as a result of the collision. Doles was charged with vehicular homicide.
 {¶ 3} At the time of the accident, Doles was insured under a policy issued by Safe Auto Insurance Company, and William Harrod was insured under a personal policy issued by State Farm Insurance Company ("State Farm"). Additionally, Mead Corporation, William Harrod's employer at the time of his death, had automobile insurance through Travelers; this coverage included liability coverage with policy limits of $3,000,000 with an effective policy period of April 1, 1996 to April 1, 1997. At the time of the accident, William Harrod, who was employed as a "millright/union representative [sic],"[2] was not in the course and scope of employment, and he was driving a personal automobile, not a company vehicle.[3]
 {¶ 4} After the accident, plaintiff sued Lance R. Doles and State Farm in Vinton County Common Pleas Court. On March 30, 1998, for and in consideration of $100,000, plaintiff settled with State Farm and assigned to State Farm "all of her right, title and interest to any and all claims which she may have either individually or in her capacity as administrator of the estate of William Harrod for damages, costs, expenses, loss of services, personal injury and death against Lance R. Doles. This includes any claims which the undersigned has made or could make in the case of Connie Harrod, Administrator of the Estate of WilliamHarrod vs. Lance R. Doles, et al which is presently pending in the Vinton County Common Pleas Court under Case No: 97-CV-1-17." (Release of All Claims and Assignment of Rights dated March 30, 1998.)
 {¶ 5} On July 21, 1998, because all claims had been settled, plaintiff's suit against Doles and State Farm was dismissed with prejudice.
 {¶ 6} Subsequently, in correspondence dated January 29, 2001, plaintiff, through counsel, contacted Mead Corporation to explore whether William Harrod's estate was entitled to underinsured motorist benefits under a commercial automobile policy issued to Mead Corporation by Travelers. Travelers denied coverage to plaintiff because, according to Travelers, Mead Corporation purportedly rejected uninsured ("UM") and underinsured ("UIM") motorist coverages.
 {¶ 7} On August 22, 2001, plaintiff sued Travelers, alleging an entitlement to UIM coverage under the Mead Corporation policy pursuant to R.C. 3937.59 [sic], as interpreted by Scott-Pontzer v. Liberty Mut. FireIns. Co. (1999), 85 Ohio St.3d 660, Selander v. Erie Ins. Group (1999),85 Ohio St.3d 541, and Ezawa v. Yasuda Fire Marine Ins. of Am.
(1999), 86 Ohio St.3d 557.
 {¶ 8} On May 29, 2002, Travelers moved for summary judgment, claiming: (1) the Mead Corporation expressly rejected UIM coverage; (2) even if UIM coverage had not been rejected, plaintiff, either individually, or as the representative of William Harrod's estate, did not qualify as an insured under the policy; and (3) even if plaintiff qualified as an insured, plaintiff's failure to satisfy conditions precedent to coverage precluded UIM benefits as a matter of law.
 {¶ 9} Plaintiff opposed Travelers' summary judgment motion, claiming: (1) UIM coverage arose by operation of law because the alleged offer and rejection failed to comply with Linko v. Indemnity Ins. Co. ofN. Am. (2000), 90 Ohio St.3d 445; (2) decedent, William Harrod, was an insured under implied UIM coverage in the amount of $3,000,000, less a setoff of the amounts available from the tortfeasor's liability carrier; and (3) plaintiff did not violate notice or subrogation provisions that were contained in the liability policy because these provisions did not apply to UM/UIM coverage that were implied by operation of law.
 {¶ 10} On October 2, 2002, the trial court granted Travelers' summary judgment motion, finding plaintiff failed to comply with the notice and subrogation provisions of the policy.
 {¶ 11} Plaintiff timely appeals and assigns the following errors:
I. The lower court committed reversible error in granting summary judgment in favor of Defendant Travelers Indemnity Company of Illinois because Defendant was not entitled to judgment as a matter of law and the case presented genuine issues of material fact which demand jury resolution.
II. The lower court committed reversible error in finding that Plaintiff failed to protect Defendant's subrogation rights when said protection was legally impossible because the subrogation rights were transferred to Plaintiff's personal insurance carrier by operation of law pursuant to R.C. 3937.18(E).
III. The lower court committed reversible error in applying the notice and subrogation provisions contained in the liability policy to the uninsured/underinsured motorist coverage implied by operation of law.
IV. The lower court committed reversible error in finding that the purported subrogation provision was a condition precedent to coverage.
 {¶ 12} Upon the condition of a grant of appellate relief to plaintiff, Travelers cross-appeals as follows:
The trial court erred when it held that plaintiff-appellant qualified as an "insured" for any "implied" uim coverages under the mead corporation business auto policy.
 {¶ 13} Additionally, at oral argument, as an alternative basis in support of the trial court's judgment, Travelers contended plaintiff in a March 1998 agreement with State Farm assigned her Scott-Pontzer claim to State Farm and, therefore, plaintiff lacks standing to sue Travelers.
 {¶ 14} Appellate review of a lower court's granting of summary judgment is de novo. Mitnaul v. Fairmount Presbyterian Church,149 Ohio App.3d 769, 2002-Ohio-5833, at ¶ 27. "`De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.'" Id., quoting Brewer v. ClevelandCity Schools (1997), 122 Ohio App.3d 378, citing Dupler v. MansfieldJournal (1980), 64 Ohio St.2d 116, 119-120, certiorari denied (1981),452 U.S. 962, 101 S.Ct. 3111. Summary judgment is proper when a movant for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 15} Under Civ.R. 56(C), a movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Dresher, at 293; Vahila v. Hall (1997), 77 Ohio St.3d 421, 430; Civ.R. 56(E).
 {¶ 16} Plaintiff's first assignment of error asserts the trial court erred because (1) Travelers was not entitled to judgment as a matter of law, and (2) there are genuine issues of material fact that should have precluded a grant of summary judgment in Travelers' favor.
 {¶ 17} As a threshold matter, we must first determine whether William Harrod, at the time of his death, was an insured under the commercial automobile policy issued to the Mead Corporation by Travelers. See Blankenship v. Travelers Ins. Co., Pike App. No. 02CA693, 2003-Ohio-2592, at ¶ 14 (finding that before entertaining arguments whether UIM coverage arose by operation of law, it was necessary to determine whether a party was an insured). See, also, Westfield Ins. Co.v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, at ¶ 35 ("[a]n insured can be the policyholder or another who is entitled to insurance coverage under the terms of the policy").
 {¶ 18} As appositely stated in Blankenship, supra, at ¶ 13:
It is axiomatic in insurance law that coverage under an insurance contract extends only to "insureds" under the policy. In any dispute concerning coverage under an insurance contract, whether the party claiming coverage under the policy is an "insured" is of primary import. If the party is found not to be an "insured" under the policy, that party cannot claim coverage extends to them. However, where the party is found to be an "insured" under the policy, coverage will extend to them barring any other applicable condition or exclusion. * * * A fortiori, qualifying as an insured is a precondition to coverage under a policy for insurance.
 {¶ 19} Generally, "[t]he purpose of a commercial auto policy is to protect the policyholder." Galatis, at ¶ 37, citing King v. NationwideIns. Co. (1988), 35 Ohio St.3d 208. As stated by the Galatis court, "Providing uninsured motorist coverage to employees who are not at work or, for that matter, to every employee's family members is detrimental to the policyholder's interests. * * * King held that the use of a vehicle `by and for' the corporate policyholder precipitated coverage. This holding is reasonable because it arguably benefits the policyholder to insure against losses sustained by those operating vehicles on its behalf." Id. at ¶ 37-38.
 {¶ 20} Accordingly, the Galatis court, in part, held:
Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment. (King v.Nationwide Ins. Co. [1988], 35 Ohio St.3d 208, 519 N.E.2d 1380, applied;Scott-Pontzer v. Liberty Mut. Fire Ins. Co. [1999], 85 Ohio St.3d 660,710 N.E.2d 1116, limited.)
Id., paragraph two of the syllabus. See, also, Galatis, at ¶ 61 ("we hereby limit Scott-Pontzer v. Liberty Mut. Ins. Co. to apply only where an employee is within the course and scope of employment").
 {¶ 21} Here, at the time of the fatal accident, William Harrod was not in the course and scope of employment. Furthermore, Harrod was driving a personal automobile, not a company vehicle. Therefore, pursuant to Galatis, plaintiff cannot, as a matter of law, prevail relying uponScott-Pontzer to assert that William Harrod was an insured under the Mead Corporation's commercial automobile policy at the time of the fatal accident.
 {¶ 22} Moreover, we find plaintiff's reliance on Selander v. ErieIns. Group (1999), 85 Ohio St.3d 541, is inapposite. In Selander, Glenn and Eugene Selander were electricians involved in a partnership known as Twin Electric and were working in the course and scope of their business activities. On November 14, 1992, Eugene Selander was killed and Glenn Selander was seriously injured when a car driven by David L. Clark struck the Selander pickup truck. The pickup truck was a covered automobile under a commercial automobile policy that included UM/UIM motorist coverage. Following the accident, Eugene Selander's widow, and Glenn Selander and Glenn Selander's wife, received settlements based upon this commercial automobile policy. Eugene Selander's widow, Glenn Selander, and Glenn Selander's wife, also settled claims against Clark's liability insurer. Additionally, Glenn Selander and his wife were covered under a separate automobile insurance policy that included UM/UIM coverage.
 {¶ 23} Thereafter, appellees, Eugene Selander's widow, Glenn Selander, and Twin Electric, filed a claim for underinsured motorists benefits under a general business liability policy issued to Twin Electric. On discretionary appeal, the Ohio Supreme Court found that the general liability insurance policy qualified as an "automobile liability or motor vehicle policy" under former R.C. 3937.18 and, therefore, the policy was required to offer UM/UIM coverage. Because the policy did not offer UM/UIM coverage, coverage arose by operation of law in the amount equal to liability coverage under the policy, and appellees were entitled to compensation. Selander, at 546.
 {¶ 24} Here, unlike circumstances in Selander, William Harrod's death did not occur within the course and scope of his employment. Furthermore, the policy at issue is a commercial automobile policy, not a general business liability policy. Therefore, Selander is distinguishable and plaintiff's reliance on Selander is not persuasive. See, also,Galatis, paragraph two of the syllabus.
 {¶ 25} According to the common policy declarations of the Mead Corporation policy issued by Travelers, "the Mead Corporation" was the named insured. Endorsement IL T8 00 04 96 amended the policy definition of insured by replacing it with the following:
"Named insured" means the organization, including any subsidiary thereof, named in item one of the declarations and also includes any other subsidiary company which is acquired or formed by the named insured during the policy period and over which the named insured maintains financial control.
A Company shall be deemed to be financially controlled and/or a subsidiary if more than fifty (50) percent of its stock is owned by the named insured.
"Named insured" also includes any employee benefit trust and/or any employee benefits auxiliary trust for the "named insured" and any subsidiaries of such employee benefits trusts which the trust wholly owns the controlling stock.
See, also, "Section II — Liability Coverage" of the "Business Auto Coverage Form."[4]
 {¶ 26} Additionally, the "Drive Other Care Coverage — Broadened Coverage For Named Individuals" endorsement, which modified the "Business Auto Coverage Form," provided additional coverage to "Any officer, director, or employee to whom autos are furnished for business or personal use, including spouses and family members[.]"
 {¶ 27} In this case, as previously noted, William Harrod, at the time of his death, was not within the course and scope of employment and he was driving a personal vehicle. Additionally, William Harrod, at the time of his death, was not assigned a company automobile.[5]
Therefore, under these circumstances and based upon our independent review of the express policy language, we conclude William Harrod, at the time of his death, was not an insured under the Mead Corporation's commercial automobile policy that was issued by Travelers. See, also,Galatis, paragraph two of the syllabus.
 {¶ 28} Moreover, even assuming Travelers failed to satisfy the requirements of former R.C. 3937.18 as interpreted in Linko, supra,[6]
and Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996),76 Ohio St.3d 565,[7] and, therefore underinsured motorist coverage arose by operation of law under the Mead Corporation policy, see Abatev. Pioneer Mut. Cas. Co. (1970), 22 Ohio St.2d 161, paragraph two of the syllabus, because William Harrod, at the time of his death, was not an insured under the Mead Corporation automobile policy, any UIM coverage that may have arisen by operation of law did not apply to William Harrod for injuries sustained in the automobile accident with Doles. See, e.g.,Blankenship, supra, at ¶ 46.
 {¶ 29} Furthermore, because William Harrod, at the time of his death, was not an insured under the Mead Corporation policy, plaintiff, as administrator of William Harrod's estate, has no legal entitlement to benefits under any UIM coverage that may have arisen by operation of law under the Mead Corporation policy. See, e.g., Dawson v. Ohio Dept. ofHuman Serv. (1990), 68 Ohio App.3d 262, 263 ("[a]n executor may ordinarily prosecute in his representative capacity any cause which his decedent could have instituted. * * * The executor of an estate, as a legal representative, settles the decedent's affairs and `stands in [the decedent's] shoes' as far as entitlement to benefits is concerned"). Additionally, because William Harrod was not a named insured under the Mead Corporation policy, plaintiff, as an individual, cannot prevail by asserting a claim pursuant to Ezawa, supra. See Galatis, paragraph three of the syllabus, overruling Ezawa (holding "[w]here a policy of insurance designates a corporation as a named insured, the designation of `family members' of the insured as other insureds does not extend insurance coverage to a family member of an employee of the corporation, unless that employee is also a named insured").
 {¶ 30} Consequently, construing the evidence most strongly in plaintiff's favor and having found plaintiff's decedent was not an insured under the Travelers policy issued to Mead Corporation and plaintiff, as an individual, was not an insured under the Mead Corporation policy, we therefore conclude reasonable minds could come to but one conclusion and that conclusion is adverse to plaintiff. Therefore, plaintiff's first assignment of error is overruled.
 {¶ 31} Having found neither William Harrod nor plaintiff was an insured under the Mead Corporation's commercial automobile policy, plaintiff's second, third, and fourth assignments of error, and Travelers' conditional assignment of error on cross-appeal, have no practical significance and are therefore moot. Additionally, having already found plaintiff cannot prevail relying upon Scott-Pontzer, supra, we also find Travelers' contention, which it raised at oral argument, that plaintiff lacked standing to sue Travelers because plaintiff assigned herScott-Pontzer claim to State Farm is also moot. See, e.g., App.R. 12(A)(1)(c).
 {¶ 32} Accordingly, we therefore affirm the judgment of the Franklin County Court of Common Pleas, although we affirm for different reasons. See Phillips v. Dayton Power Light Co. (1994),93 Ohio App.3d 111, 115 ("[s]ince the reviewing court must independently determine, as a matter of law, whether summary judgment was properly rendered based upon the record made up in the trial court, it is legally immaterial whether the trial court has provided a sound analysis, or any analysis. A summary judgment based on a legally erroneous analysis of the issues must be affirmed if the appellate court independently determines that upon the record summary judgment should have been rendered as a matter of law, albeit for different reasons").
 {¶ 33} For the foregoing reasons, plaintiff's first assignment of error is overruled. Plaintiff's second, third, and fourth assignments of error and Traveler's conditional assignment of error on cross-appeal are moot. The judgment of the Franklin County Court of Common Pleas is therefore affirmed.
Judgment affirmed.
Bowman and Lazarus, JJ., concur.
[1] In her complaint, plaintiff identified defendant as "Travelers Property Casualty." In its answer, defendant noted its proper designation is "Travelers Indemnity Company of Illinois."
[2] See Interrogatory No. 6(c), Travelers Indemnity Company of Illinois' First Set of Interrogatories.
[3] See Interrogatory No. 10(a) and (b), Travelers Indemnity Company of Illinois' Second Set of Interrogatories. See, also, Interrogatory No. 12, Travelers Indemnity Company of Illinois' Second Set of Interrogatories (admitting William Harrod's vehicle that was involved in the accident was not named as a covered automobile under the Mead Corporation policy).
[4] "Section II — Liability Coverage" of the "Business Auto Coverage Form" provided the following:
1. WHO IS AN INSURED
The following are "insureds":
a. You for any covered "auto."
b. Anyone else while using with your permission a covered" auto" you own, hire or borrow except:
(1) The owner or anyone else from whom you hire or borrow a covered "auto." This exception does not apply if the covered "auto" is a "trailer" connected to a covered" auto" you own.
(2) Your employee if the covered "auto" is owned by that employee or a member of his or her household.
(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless business is yours.
(4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered "auto."
(5) A partner of yours for a covered "auto" owned by him or her or a member of his or her household.
c. Anyone liable for the conduct of an "Insured" described above but only to the extent of that liability.
[5] See Interrogatory No. 11, Travelers Indemnity Company of Illinois' Second Set of Interrogatories.
[6] Effective October 31, 2001, Linko, supra, was superseded by statute as stated in Section 3(E) of Am.Sub.S.B. No. 97. Because the policy at issue was in effect from April 1, 1996 to April 1, 1997, Linko is applicable here.
[7] Effective October 31, 2001, Gyori, supra, was superseded by statute as stated in Section 3(E) of Am.Sub.S.B. No. 97. Because the policy at issue was in effect from April 1, 1996 to April 1, 1997, Gyori is applicable here.