[Cite as *State v. Bridges*, 2015-Ohio-4480.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 14AP-602 |
| v. | : | (C.P.C. No. 12CR-12-6437) |
| Tony Bridges, Jr., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 29, 2015

*Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee.

*Yeura Venters*, Public Defender, and *Timothy E. Pierce*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Tony Bridges, Jr. ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas sentencing him to five years of community control pursuant to his plea of no contest to two counts of endangering children and one count of felonious assault. Because we conclude that the trial court did not err by denying appellant's motion to dismiss, we affirm.

{¶ 2} On December 10, 2012, appellant was charged in the Franklin County Municipal Court with one count of domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A), and one count of assault, a first-degree misdemeanor in violation of R.C. 2903.13(A). The complaints alleged that, earlier the same day, appellant struck the victim, his seven-year-old son, multiple times in the neck, chest, back, and arms with a belt, resulting in dark bruises, welts, and broken skin. On December 19, 2012,

appellant, represented by counsel, pled guilty to the charge of domestic violence, and the municipal court dismissed the assault charge.

{¶ 3}   The following day, on December 20, 2012, the Franklin County Grand Jury issued an indictment charging appellant with two counts of endangering children, both second-degree felonies in violation of R.C. 2919.22, and one count of felonious assault, a second-degree felony in violation of R.C. 2903.11 ("the felony indictment").   Each of the charges in the felony indictment related to the harm appellant inflicted on his son during the December 10, 2012, incident. Appellant moved to dismiss the felony indictment, asserting that he could not be prosecuted for additional charges arising from the events of December 10, 2012, because the state had not expressly reserved the right to bring further charges as part of the plea agreement under which he pled guilty to domestic violence in the municipal court.  The state opposed the motion to dismiss, arguing that appellant failed to establish that his guilty plea in the municipal court proceeding was pursuant to a negotiated plea agreement and that, even if it was, the county prosecutor was not a party to any plea agreement. Following a hearing on the motion to dismiss and supplemental briefing from the parties, the trial court denied appellant's motion, concluding that there was no negotiated plea agreement that would preclude future felony charges because the municipal court prosecutor lacked authority to enter into such an agreement.

{¶ 4}   Appellant then entered a plea of no contest to the three charges in the felony indictment.  At the plea hearing, appellant asserted that he was entering the no-contest plea for purposes of appealing the trial court's decision denying his motion to dismiss. The trial court sentenced appellant to a five-year term of community control.

{¶ 5}   Appellant appeals from the trial court's decision, assigning two errors for this court's review:

> **Appellant's First Assignment of Error:** The trial court erred in overruling Defendant-Appellant's motion to dismiss which violated his right to due process of law as memorialized in the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sections 1 and 16 of the Ohio Constitution.

> **Appellant's Second Assignment of Error:** The trial court committed plain error in violation of R.C. 2941.25 ("Multiple counts") and the Double Jeopardy Clauses of the Fifth and Fourteenth Amendments of the United States Constitution and

Article I, Section 10 of the Ohio Constitution by failing to dismiss the subsequently-issued felony indictment against the Defendant-Appellant involving two counts of child endangering and one count of felonious assault after the State had previously elected to prosecute him for the allied offense of domestic violence in the Franklin County Municipal Court and secured his conviction and punishment there.

{¶ 6}   In his first assignment of error, appellant asserts that the trial court erred by denying his motion to dismiss the felony indictment. Appellant argues that he entered into a negotiated guilty plea in municipal court, which barred further prosecution for any charges related to the same event. The trial court concluded that the municipal court prosecutor lacked authority to enter a negotiated plea agreement providing that the Franklin County prosecutor's office would not pursue charges against appellant and denied the motion to dismiss.

{¶ 7}   We review de novo a trial court's ruling on a motion to dismiss criminal charges. *State v. Romage*, 10th Dist. No. 11AP-822, 2012-Ohio-3381, ¶ 6, citing *State v. Walker*, 10th Dist. No. 06AP-810, 2007-Ohio-4666, ¶ 9-10. *See also State v. Wilson*, 10th Dist. No. 13AP-205, 2013-Ohio-4799, ¶ 4 ("We review a trial court's legal conclusions in ruling on a pretrial motion to dismiss criminal charges de novo."). Under the de novo standard, we afford no deference to the trial court's decision and conduct an independent review of the record. *Romage* at ¶ 6.

{¶ 8}   The Supreme Court of Ohio has recognized that "[p]lea agreements are an essential and necessary part of the administration of justice." *State v. Carpenter*, 68 Ohio St.3d 59, 61 (1993). A plea bargain is, in effect, a contract, and principles of contract law apply to the interpretation and enforcement of plea agreements. *State v. Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, ¶ 21; *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 50. However, "[b]ecause the defendant's constitutional rights are at stake in the plea process, the concerns underlying a plea agreement differ from and go beyond those of commercial contract law." *Dye* at ¶ 21, citing *Carpenter* at 61.

{¶ 9}   In *Carpenter*, the Supreme Court held that the state could not indict a defendant for murder after the trial court accepted a negotiated guilty plea to a lesser offense when the victim later died of injuries sustained in the crime, unless the state had expressly reserved the right to file additional charges on the record at the time of the guilty

plea. *Carpenter* at syllabus. Subsequently, in *Dye*, the Supreme Court reiterated that, where a defendant had entered into a negotiated guilty plea to the charge of aggravated vehicular assault, the state could not later prosecute him for aggravated vehicular homicide following the victim's death because the state had not expressly reserved the right to bring a homicide charge if the victim died. *Id.* at ¶ 28. Appellant argues that, under the principles articulated in *Carpenter* and subsequent decisions, his negotiated guilty plea in municipal court barred the subsequent indictment from the Franklin County Grand Jury on felony charges arising from the same incident.

{¶ 10} The state asserts, in part, that appellant has failed to demonstrate that his guilty plea in the municipal court proceeding was a negotiated guilty plea within the meaning of *Carpenter*. In order to establish the existence of a negotiated guilty plea, the record must demonstrate the existence of the elements of a contract. *Dye* at ¶ 23. The state argues that the only material submitted to the trial court regarding the municipal court proceeding was a transcript, which failed to clearly indicate dismissal of any charges. The state notes that this court granted appellant's motion to supplement the record but argues that this court should not consider the copies of the complaints and sentencing entry provided under that motion because they were not part of the trial court's record. The state also argues that, even if there was a negotiated guilty plea, the trial court correctly concluded that the municipal court prosecutor lacked authority to enter into a plea agreement that would be binding on the Franklin County prosecutor.

{¶ 11} Assuming, without deciding, that appellant's plea in the municipal court was a negotiated guilty plea, we conclude that, under the facts of this case, it did not bar the subsequent felony indictment. The basis of the rule developed in *Carpenter* and subsequent cases is that "effect must be given to the intention of the state and the defendant in their plea bargain, and courts should enforce what they perceive to be the terms of the original agreement." *Dye* at ¶ 22. Thus, a negotiated guilty plea " 'bars successive prosecutions where the defendant *would reasonably believe* that his or her plea would bar further prosecutions for any greater offense related to the same factual scenario.' " (Emphasis added.) *State v. Church*, 10th Dist. No. 12AP-34, 2012-Ohio-5663, ¶ 8, quoting *State v. Edwards*, 8th Dist. No. 94568, 2011-Ohio-95, ¶ 23, citing *Dye*. In this case, given the circumstances surrounding appellant's guilty plea in the municipal court proceeding,

appellant has failed to demonstrate that it was reasonable for him to believe that his plea would bar subsequent prosecution for greater offenses related to his actions.

{¶ 12} In *Carpenter*, the defendant, Carpenter, committed a stabbing and was indicted on one count of felonious assault. Following negotiations with the prosecution, in January 1985, Carpenter entered a guilty plea to the lesser-included offense of attempted felonious assault. At the time of the guilty plea, the prosecution was aware that the victim was in a coma and would likely die, but the plea agreement did not refer to the possibility of additional prosecution if the victim died. In March 1986, the victim died. Sometime after September 1987, Carpenter was released from prison after serving a portion of his sentence on the attempted felonious assault charge. In January 1988, Carpenter was charged with the murder of the stabbing victim. He filed a motion to dismiss the indictment, arguing that further prosecution was prohibited under the terms of his 1985 plea agreement. The trial court granted that motion, and the court of appeals reversed. *Carpenter* at 60.

{¶ 13} On appeal, the Supreme Court of Ohio affirmed the dismissal of the indictment, holding that, if the state wished to reserve the right to bring further charges against Carpenter in the event of the victim's death, it was required to make that reservation a part of the record. *Id.* at 62. The court concluded that Carpenter had a "reasonable and justified" expectation that, by pleading guilty, he was "terminating the incident and could not be called on to account further on any charges regarding [the] incident" and that the prosecutor was aware of this expectation. *Id. See also Dye* at ¶ 26 (holding that the defendant had a reasonable expectation that guilty plea would preclude further prosecution because both the defendant and the prosecution were aware of the severity of the victim's injuries and the potential that the victim would die as a result of those injuries, but the state failed to reserve the right to bring further charges if the victim died); *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, ¶ 52-60 (holding that the defendant had a reasonable expectation that guilty plea would preclude further prosecution because the defendant signed a negotiated plea agreement on the same day the bill of information was filed, agreeing to plead guilty to all counts set forth in bill of information, and because both the prosecutor and the court that accepted the guilty plea had jurisdiction over all of the actual and potential charges).

{¶ 14} By contrast, in *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, the Supreme Court of Ohio held that the defendant, Zima, failed to show why her belief that a guilty plea would prevent further prosecution was reasonable. *Id.* at ¶ 14. On July 3, 2001, Zima struck an oncoming motorcycle with her car. On July 6, 2001, she was charged in the Cleveland Municipal Court with driving under the influence, driving under suspension, failure to yield, and failure to wear a seatbelt. *Id.* at ¶ 1. Later, on August 23, 2001, a Cuyahoga County Grand Jury indicted Zima on charges of aggravated vehicular assault based on driving under the influence, aggravated vehicular assault based on driving recklessly, and driving under the influence. *Id.* On August 27, 2001, Zima entered a no-contest plea in municipal court to the charge of driving under the influence, and the prosecution dismissed the three remaining municipal court charges. At the time of her no-contest plea, Zima was not aware of the indictment from the Cuyahoga County Grand Jury. *Id.* at ¶ 2. After sentencing on the municipal court charges, Zima moved to dismiss the indictment from the Cuyahoga County Grand Jury. The trial court granted Zima's motion to dismiss. *Id.* at ¶ 3.

{¶ 15} The Supreme Court of Ohio distinguished Zima's case from *Carpenter*, noting that, when Zima pled guilty in the municipal court, she had already been indicted on felony charges by the Cuyahoga County Grand Jury. *Id.* at ¶ 14. Importantly, the court noted that "[n]either the municipal court nor the city prosecutor had the authority to dismiss those pending felony charges." *Id.* While acknowledging that Zima was apparently not aware of the felony indictments when she pled guilty, the court stated that a " 'defendant should be aware that a plea taken before a municipal judge with limited criminal jurisdiction might not dispose of the matter fully.' " (Internal citation omitted.) *Id.* The *Zima* decision reasoned that, in *Carpenter*, the defendant's expectation that the guilty plea would terminate further prosecution was "inherently justified because the prosecutor and the court had jurisdiction over all the charges, both actual and potential, and because the negotiated guilty plea included the dismissal of all pending charges." *Zima* at ¶ 12. "In the absence of these or equivalent circumstances, however, it would be exceedingly difficult to sustain a defendant's belief that no further charges will be brought or prosecuted." *Id. See also Cleveland v. Evans*, 8th Dist. No. 100721, 2014-Ohio-4567, ¶ 35 (holding that the defendant's belief that his guilty plea would dispose of all charges was not reasonable when

the defendant pled no contest to driving under a suspended license, but plea did not address operating a vehicle while intoxicated charges, and when, at the time of the plea, a common pleas case number had been assigned for operating a vehicle while intoxicated charges and grand jury proceedings were pending); *State v. Sims*, 9th Dist. No. 22677, 2006-Ohio-2415, ¶ 24 (holding that the defendant's belief that her guilty plea to three misdemeanor charges would prevent further prosecution on felony charges was not reasonable in part because "a municipal court does not have jurisdiction over felony offenses * * *, and a city prosecutor does not have the authority to handle the final disposition of felony cases").

{¶ 16} In the present case, the transcript of the municipal court proceeding at which appellant pled guilty indicates that appellant was aware of the potential for felony charges due to the severity of the victim's injuries. In explaining the case to the court, the municipal court prosecutor offered the following statement:

> MR. BENNINGTON: Your Honor, this case is set for pretrial today. This is also a case that is on track to be indicted as a felony due to the severity of the harm that was inflicted here. I do believe the defendant is pleading today to avoid that felony. It actually should have been indicted last week and something happened and it didn't get indicted. But I'm not prepared to dismiss, to go forward with the indictment, so we are making an offer of just maximum jail of 180 days in jail on this. I think it's appropriate given the severity of the injuries.

(Dec. 19, 2012 Municipal Ct. Tr. 2-3.) After a brief discussion of appellant's jail-time credit and ability to pay fines or costs, the municipal court imposed a sentence of 180 days' imprisonment, with 10 days of jail-time credit, and stated that "[appellant] is to continue to do the 170 until somehow or other the indictment of the felony comes about." (Municipal Ct. Tr. 3.) At the prompting of the municipal court prosecutor, the court then verified that appellant intended to plead guilty, to which appellant responded "Yes, Your Honor, I'm pleading guilty to it." (Municipal Ct. Tr. 4.)

{¶ 17} Although the municipal court prosecutor stated that he believed appellant was pleading guilty to avoid a felony charge, there was no indication that he made any assurances to appellant that the guilty plea would preclude further prosecution. Moreover, despite the prosecutor's unclear statement of "I'm not prepared to dismiss, to go forward with the indictment," we note that, in imposing the sentence, the municipal court judge indicated appellant was to serve his sentence *until* the indictment of the felony was issued.

(Municipal Ct. Tr. 4.) If appellant, who was represented by counsel at the municipal court hearing, believed that his guilty plea would prevent further prosecution, the comments from both the prosecutor and the judge should have placed him on notice that his belief might be mistaken. At the very least, appellant or his counsel should have sought clarification of the effect of the guilty plea. It is noteworthy that appellant did not formally enter his guilty plea until *after* these statements by the prosecutor and the judge.

{¶ 18} Appellant argues that his case is similar to this court's decision in *Church*, which held that the defendant's guilty plea prohibited further prosecution. In *Church*, the defendant, Church, was charged in municipal court on March 5, 2010, with one count of possession of a controlled substance and one count of failure to use a crosswalk. *Id.* at ¶ 2. On March 31, 2010, Church entered into a negotiated plea providing that he would plead guilty to the crosswalk violation in exchange for dismissal of the drug possession charge. *Id.* Subsequently, on May 12, 2010, Church was indicted in the Franklin County Court of Common Pleas on one count of trafficking in marijuana. *Id.* at ¶ 3. The marijuana-trafficking charge was based on the same incident that gave rise to the municipal court proceeding. *Id.* at ¶ 15. He filed a motion to dismiss, arguing that the prosecution violated the Double Jeopardy Clause. *Id.* at ¶ 3. The trial court denied the motion to dismiss, and Church entered a no-contest plea. On appeal, this court held that, because the state did not expressly reserve the right to bring future charges, Church's negotiated plea barred prosecution on the subsequent indictment. The court concluded that Church "had a reasonable expectation, based upon the negotiated plea agreement entered in the municipal court, that he would not be subject to more serious drug charges arising out of the incident." *Id.* at ¶ 17.

{¶ 19} We conclude that there are several important distinctions between *Church* and the present case. In *Church*, nearly six weeks passed between the guilty plea and the subsequent indictment; whereas, in this case, the felony indictment was issued on December 20, 2012, only one day after appellant entered his guilty plea in the municipal court proceeding. Moreover, the *Church* decision does not suggest that there was any discussion of possible felony charges at the municipal court plea hearing. By contrast, in this case, the statements by the municipal court prosecutor and judge indicated that felony proceedings were under consideration and, in fact, that the case was "on track" to lead to a

felony indictment. As explained above, these comments signaled that felony prosecution was possible and undermine appellant's claim that he believed his plea would preclude further prosecution. This case is more analogous to the *Zima* decision where the defendant could not reasonably rely on an implied representation that no further charges would result. *See Zima* at ¶ 14.

{¶ 20} Appellant has failed to articulate circumstances demonstrating why his asserted belief that his guilty plea would prevent further prosecution was reasonable. *Id.* Therefore, we conclude that the trial court did not err by denying appellant's motion to dismiss, albeit for a different reason than the one articulated by the trial court. *See Agricultural Ins. Co. v. Constantine*, 144 Ohio St. 275, 284 (1944) ("By repeated decisions of this court it is the definitively established law of this state that where the judgment is correct, a reviewing court is not authorized to reverse such judgment merely because erroneous reasons were assigned as the basis thereof."); *Newcomb v. Dredge*, 105 Ohio App. 417, 424 (2d Dist.1957) ("It is the duty of the reviewing court to affirm the judgment if it can be supported on any theory, although a different theory from that of the trial court."); *Harrod v. Travelers Property Cas.*, 10th Dist. No. 02AP-1181, 2003-Ohio-7229, ¶ 32 ("[W]e therefore affirm the judgment of the Franklin County Court of Common Pleas, although we affirm for different reasons.").

{¶ 21} Accordingly, we overrule appellant's first assignment of error.

{¶ 22} Appellant asserts in his second assignment of error that the trial court committed plain error by denying his motion to dismiss because the felony indictment violated the Double Jeopardy Clause of the United States Constitution and Article I, Section 10 of the Ohio Constitution. Appellant argues that the charges in the felony indictment were allied offenses of similar import to the domestic violence charge to which he pled guilty in the municipal court proceeding.[1] Appellant contends that, because the prohibition on multiple punishments for allied offenses is derived from the protection against double jeopardy, his subsequent prosecution for allied offenses violated the Double Jeopardy Clause.

---

[1] In his brief on appeal and reply brief, appellant argues for application of the allied-offenses test set forth in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. We note that, subsequent to appellant's filings, the Supreme Court of Ohio issued *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, modifying the test for allied offenses of similar import.

{¶ 23} The state claims that appellant waived this argument by failing to raise it in the court below. However, under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *See State v. Toyloy*, 10th Dist. No. 14AP-463, 2015-Ohio-1618, ¶ 19. "To constitute plain error, the error must be obvious, on the record, palpable, and fundamental such that it should have been apparent to the trial court without objection." *State v. Gullick*, 10th Dist. No. 13AP-26, 2013-Ohio-3342, ¶ 3. Appellant appears to concede that he has waived all but plain error with respect to this argument by asserting that the trial court committed plain error in his statement of the second assignment of error. Therefore, we apply the plain-error standard in our review of this issue.

{¶ 24} The Double Jeopardy Clause of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." United States Constitution, Amendment V. This protection applies to the states through the Fourteenth Amendment to the United States Constitution. *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 10. The Ohio Constitution similarly provides that "[n]o person shall be twice put in jeopardy for the same offense." Ohio Constitution, Article I, Section 10. Because the protection afforded by the two clauses is coextensive, our analysis will focus on the Double Jeopardy Clause of the United States Constitution. *See State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, ¶ 7 ("The protections afforded by the two Double Jeopardy Clauses are coextensive.").

{¶ 25} The Double Jeopardy Clause protects against (1) a second prosecution for the same offense following acquittal, (2) a second prosecution for the same offense following conviction, and (3) multiple punishments for the same offense. *Brown* at ¶ 10. Appellant is correct that the General Assembly has codified the Double Jeopardy Clause protection against multiple punishments through the allied-offenses statute. *See State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 12; *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 23 ("R.C. 2941.25 codifies the protections of the Double Jepoardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense."). However, this case involves an issue of successive prosecution, rather than multiple punishments.

{¶ 26} The Supreme Court of Ohio has held that, in determining whether a defendant is being successively prosecuted for the same offense within the meaning of the Double Jeopardy Clause, a court must apply the "same elements" test articulated in *Blockburger v. United States*, 284 U.S. 299 (1932). *Zima* at ¶ 18. *See also State v. Volpe*, 10th Dist. No. 06AP-1153, 2008-Ohio-1678, ¶ 64 ("*Zima* involved a case of successive prosecutions, the permissibility of which is determined by the test articulated in *Blockburger*."). Under the *Blockburger* test, the court considers the elements of the two statutory provisions, "not upon the evidence proffered in a given case" to establish those elements, and determines whether each offense contains an element not contained in the other. *Zima* at ¶ 20. *See also Ruff* at ¶ 37 (French, J., concurring in judgment only) ("The *Blockburger* rule, also known as a same-elements test, focuses on the statutory elements of the offense and not the particular facts of the case or the proof offered to establish the crimes." (Internal citations omitted.)). If not, the two offenses are considered the "same offense" for purposes of the Double Jeopardy Clause, and successive prosecution is barred. *Zima* at ¶ 20, citing *United States v. Dixon*, 509 U.S. 688, 696 (1993).[2]

---

[2] In arguing against application of the *Blockburger* test, appellant cites to language from the United States Supreme Court providing an exception to *Blockburger* in certain circumstances. (Appellant's Brief at 58-60, citing *State v. DeLong*, 70 Ohio App.3d 402 (10th Dist.1990), which cited *Grady v. Corbin*, 495 U.S. 508, 516-21 (1990)); (Reply Brief at 16-17, citing *Brown v. Ohio*, 432 U.S. 161 (1977)). This exception was most clearly set forth in the *Brown* decision, wherein the court stated: "Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first." *Brown* at 166, fn. 6. This statement was based on the conclusion that the Double Jeopardy Clause incorporates principles of collateral estoppel, preventing relitigation of previously decided factual issues. *Id.* The Supreme Court of Ohio cited this exception in at least two decisions, *State v. Thomas*, 61 Ohio St.2d 254 (1990), paragraph four of the syllabus, and *State v. Tolbert*, 60 Ohio St.3d 89, 91 (1991). Although some courts have recently cited this exception (*see, e.g., State v. Edwards*, 8th Dist. No. 94568, 2011-Ohio-95, ¶ 19), a review of subsequent decisions from the United States Supreme Court and the Supreme Court of Ohio casts doubt upon its continued viability.

In *Grady*, the United States Supreme Court held that the Double Jeopardy Clause "bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady* at 521. The *Grady* decision expressly relied on *Brown*, and other earlier decisions, in reaching this conclusion. *Id.* at 515-22. However, only three years later, the United States Supreme Court decided *United States v. Dixon*, 509 U.S. 688 (1993), in which it expressly overruled *Grady*, holding that "[t]he 'same-conduct' rule [*Grady*] announced is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy." *Dixon* at 704. Although the *Dixon* decision did not expressly overrule the exception set forth in *Brown*, it referred to Brown's statement that the *Blockburger* test was not the only standard for determining whether successive prosecutions were barred by the Double Jeopardy Clause as "the purest dictum." *Id.* at 706. Similarly, in *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, the Supreme Court of Ohio rejected the appellant's argument that her second prosecution was barred under the Double Jeopardy Clause despite passing the *Blockburger* test because it would prove conduct that constituted an offense for which she was already prosecuted. The Supreme Court held that this

{¶ 27} In the municipal court proceeding, appellant was charged with and pled guilty to domestic violence, in violation of R.C. 2919.25(A). That statute provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(A). The felony indictment charged appellant with two counts of endangering children, in violation of R.C. 2919.22, and one count of felonious assault, in violation of R.C. 2903.11. We will apply the *Blockburger* test to each charge in the felony indictment to determine whether it constituted the "same offense" as the domestic violence charge in the municipal court proceeding.

{¶ 28} The statute defining the crime of endangering children offers several alternate forms of committing the offense; therefore, we must consider the language of the felony indictment to determine which portions of the statute appellant was charged with violating. The first count of the felony indictment alleged that appellant recklessly abused the victim, who was under the age of 18, resulting in serious physical harm to the victim. Thus, the first count of the felony indictment appears to charge appellant with a violation of R.C. 2919.22(B)(1), which provides that no person shall abuse a child less than 18 years of age.[3] The second count of the felony indictment set forth alternative allegations, mirroring the statutory language set forth in R.C. 2919.22(B)(2) through (4).

{¶ 29} Endangering children, as prohibited under R.C. 2919.22(B)(1) through (4), requires that the victim be a child. By contrast, the crime of domestic violence in violation of R.C. 2919.25(A) provides that the victim must be a "family or household member." The statute defines certain individuals, both adults and children, who may be a "family or household member," but requires that the individual must "resid[e] or [have] resided with the offender." R.C. 2919.25(F)(1). There is no requirement that the victim of child endangering must reside with the offender. Therefore, under the *Blockburger* test, the endangering charges under the felony indictment were not the "same offense" as domestic

_____

was effectively the "same conduct" test adopted in *Grady* and overruled in *Dixon*. *Zima* at ¶ 35. The *Zima* decision applied the *Blockburger* test without considering the "even if" exception set forth in *Brown* and other decisions.

Because *Dixon* and *Zima* appear to reject the exception to the *Blockburger* test developed in *Brown* and subsequent cases, this decision applies the *Blockburger* test, focusing strictly on the elements of the crimes charged in each prosecution.

[3] The Supreme Court of Ohio has held that the culpable mental state for the crime of endangering children is recklessness. *State v. Adams*, 62 Ohio St.2d 151, 152-53 (1980) (holding that "[r]ecklessness * * * is sufficient culpability to commit the offense [of endangering children]" because the statute does not specify any culpable mental state and does not plainly indicate a purpose to impose strict liability).

violence for double jeopardy purposes because each crime contains an element that the other does not.

{¶ 30} The third count of the felony indictment alleged that appellant knowingly caused serious physical harm to the victim in violation of R.C. 2903.11. This language mirrors the definition of felonious assault under R.C. 2903.11(A)(1), which provides that no person shall knowingly cause serious physical harm to another or to another's unborn. Under R.C. Title 29, "serious physical harm" is defined in various ways as a heightened form of physical harm. *Compare* R.C. 2901.01(A)(5) (defining serious physical harm to persons) *with* R.C. 2901.01(A)(3) (defining physical harm to persons). Domestic violence in violation of R.C. 2919.25(A) prohibits causing or attempting physical harm, while felonious assault in violation of R.C. 2903.11(A) prohibits causing *serious* physical harm. Moreover, as explained above, domestic violence in violation of R.C. 2919.25(A) requires that the victim be a family or household member, while felonious assault in violation of R.C. 2903.11(A)(1) may involve any other person. Thus, under the *Blockburger* test, the felonious assault charge was not the "same offense" as domestic violence for double jeopardy purposes.

{¶ 31} Because the charges against appellant were not the same offenses for double jeopardy purposes as the crime to which appellant pled guilty in the municipal court proceeding, the trial court did not commit plain error by denying his motion to dismiss the felony indictment.

{¶ 32} Accordingly, we overrule appellant's second assignment of error.

{¶ 33} For the foregoing reasons, we overrule appellant's two assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BRUNNER, J., concurs in judgment only, writing separately.
HORTON, J., concurs in judgment only.


BRUNNER, J., concurring in judgment only, writing separately.

{¶ 34} I concur in the majority's result on the first assignment of error because I do not believe the facts in this case support the notion that Bridges pled guilty as a result of a negotiated plea such that he could have had a reasonable belief that his plea terminated the incident. In addition, because the United States Supreme Court case law on double

jeopardy has unfortunately taken us in the direction we decide today, I must concur with the majority's result on the second assignment of error based on *United States v. Dixon*, 509 U.S. 688 (1993). However, I write separately to register my dissatisfaction with the result compelled by *Dixon* and to express my view that the cases cited by the majority would not justify overruling Bridges' first assignment of error if the facts of this case had supported the notion that Bridges had pled guilty as a result of a negotiated plea rather than what could be characterized as a unilateral gambit by the defense.

**First Assignment of Error:**

{¶ 35} Had Bridges pled guilty as a result of a negotiated plea, it would have been proper for the common pleas court to grant his motion to dismiss. The state did not reserve the right on the record to bring future charges as a result of the incident from which the municipal charges and plea arose, and felony charges were not filed until after Bridges pled guilty to domestic violence, and the municipal court dismissed the associated assault charge. Whether the state was represented by the city attorney or the county prosecutor and at which juncture is immaterial, since no representative of the state reserved the right to bring further charges from the incident prosecuted.

{¶ 36} Moreover, by the time felony charges were indicted, Bridges already had been prosecuted and convicted. That the state missed the opportunity to indict Bridges for more serious crimes cannot be remedied using *State v. Zima,* 102 Ohio St.3d 61, 2004-Ohio-1807, because it is significantly and factually different from this case. Bridges was prosecuted by the state before the municipal court for crimes that occurred in a single, defined set of circumstances—he committed violence resulting in physical harm to his seven-year-old son, striking him multiple times in the neck, chest, back, and arms with a belt, resulting in dark bruises, welts, and broken skin.

{¶ 37} In *Zima*, the defendant was prosecuted in Cleveland Municipal Court only for driving under the influence, driving under suspension, failure to yield, and failure to wear a seatbelt for a single activity that culminated in her striking with her car an oncoming motorcycle. Later, she was charged with aggravated vehicular assault under circumstances of driving under the influence and driving recklessly, and she was charged again with driving under the influence. She pled no contest to the first driving under the influence charge and was found guilty, the other municipal charges having been dismissed. When

Zima pled guilty on municipal charges, she had already been indicted on the felony charges by a grand jury and was presumably aware of those charges. Any argument that she had a reasonable expectation that her plea terminated her culpability is implausible.

{¶ 38} Bridges, however, was not indicted until the day *after* he pled guilty to misdemeanor charges for the same single course of violence toward his son that he had been prosecuted for the previous day. Accordingly, if the record showed that Bridges had pled guilty as a result of a negotiation with the prosecutor, the holdings in *State v. Carpenter,* 68 Ohio St.3d 59 (1993), and *State v. Harrison,* 122 Ohio St.3d 512, 2009-Ohio-3547, ¶ 52-60, would be more appropriately applied to Bridges' situation, as opposed to the holding in *Zima.* It would have been reasonable for Bridges to have an expectation that his earlier guilty plea was terminating his culpability in the incident involving his son because, unlike in *Zima*, Bridges' actions were indivisible. Zima could be prosecuted on one day for particular driving infractions that did not involve direct injury to another and separately for actual harm she caused to another when she not only drove recklessly and under the influence, but hit a motorcycle doing so (except for the offense of driving under the influence, of which she was previously found guilty).

**Second Assignment of Error:**

{¶ 39} Despite the United States Supreme Court's decision in *Dixon* to repudiate the "same conduct" test, I fail to see by any stretch of the imagination that the public could have any confidence in the justice system in Franklin County when the State of Ohio, whether represented by the Columbus City Attorney or the Franklin County Prosecutor, can with our sanction prosecute appellant twice for the same crime. I believe the reasoning in *Brown v. Ohio*, 432 U.S. 161 (1977), involving the double prosecution of joy riding and auto theft by two municipalities for actions occurring over a nine-day period using the same vehicle should still apply. In *Brown*, the United States Supreme Court stated:

> The question in this case is whether the Double Jeopardy Clause of the Fifth Amendment bars prosecution and punishment for the crime of stealing an automobile following prosecution and punishment for the lesser included offense of operating the same vehicle without the owner's consent.

*Id.* at 162. The Supreme Court stated:

> As is invariably true of a greater and lesser included offense, the lesser offense[—]joyriding[—]requires no proof beyond that which is required for conviction of the greater[—]auto theft. The greater offense is therefore by definition the "same" for purposes of double jeopardy as any lesser offense included in it.

*Id.* at 168. Domestic violence involves knowingly causing physical harm or recklessly causing serious physical harm to a family or household member. R.C. 2919.25. Child endangering and felonious assault do not necessarily involve a family or household member, but as indicted involve inflicting *serious* physical harm. R.C. 2919.22(B) and 2903.11. Both sets of charges, in municipal court, and in the common pleas court, relate to the same incident and the same victim, Bridges' beating of his child. While child endangering involves a child as opposed to a family member, the status of the victim in regard to the harm suffered did not change whether or not he was characterized as a family member or as a child—he was still harmed.

{¶ 40} The crux of crimes prosecuted—domestic violence, assault, child endangering, and felonious assault—is physical harm or serious physical harm. Even if the conviction in the municipal court was for the infliction of physical harm only, that would necessarily be able to be proved in the common pleas court by finding Bridges guilty of having inflicted *serious* physical harm based on child endangering or felonious assault.

{¶ 41} Further, whether the more serious crime is prosecuted first or second is immaterial under the United States Supreme Court's holding in *Brown*:

> "[W]here… a person has been tried and convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offence." [*In re Nielsen,* 131 U.S. 176, 188 (1889).]
>
> Although in this formulation the conviction of the greater precedes the conviction of the lesser, the opinion makes it clear that the sequence is immaterial.

*Brown* at 168. Under *Brown*, double jeopardy attaches, and the second prosecution cannot constitutionally commence.

{¶ 42} Finally, even if the second prosecution of Bridges could be taken to be for a different part of the same day in which Bridges beat his son, the United States Supreme Court in *Brown* stated that double jeopardy still attaches:

> The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units. *Cf. Braverman v. United States*, 317 U.S. 49, 52, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942). The applicable Ohio statutes, as written and as construed in this case, make the theft and operation of a single car a single offense. Although the Wickliffe and East Cleveland authorities may have had different perspectives on Brown's offense, it was still only one offense under Ohio law. Accordingly, the specification of different dates in the two charges on which Brown was convicted cannot alter the fact that he was placed twice in jeopardy for the same offense in violation of the Fifth and Fourteenth Amendments.

(Footnote deleted.) *Id.* at 169-70.

**Conclusion:**

{¶ 43} The judgment of the trial court is troubling. Without *Dixon*, and based on *Brown*, it is clear that Bridges was prosecuted twice for the same crime in violation of the Double Jeopardy Clause of the Fifth Amendment. Although *Dixon*'s strict insistence on figuratively "lining up" the elements under an exact comparison test allows the crimes to be artificially differentiated, in my view, common sense shows that, on these facts, these are the same offenses by different names—the offenses here concerned the same course of conduct against the same person and essentially the same harm. The second prosecution of Bridges should be constitutionally impermissible double jeopardy in violation of the Fifth and Fourteenth Amendments of the United States Constitution. In addition, had Bridges pled guilty as a result of a negotiated plea, *Carpenter* and *Harrison* would apply, not *Zima*, and Bridges would have had a justifiable and reasonable expectation that his plea terminated the incident with the result that it would have violated due process to prosecute him further.

_____