[Cite as *State v. Soto*, 2018-Ohio-459.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                     CASE NO.  12-17-05

      v.

TRAVIS SOTO,                            O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Putnam County Common Pleas Court
Trial Court No. 2016 CR 57

**Judgment Reversed and Cause Remanded**

Date of Decision:    February 5, 2018

APPEARANCES:

    *Michael J. Short* **for Appellant**

    *Lillian R. Shun* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, Travis Soto ("Soto"), brings this appeal from the April 13, 2017, judgment of the Putnam County Common Pleas Court denying Soto's motion to dismiss on the grounds of double jeopardy.

*Relevant Facts and Procedural History*

{¶2} On or about January 23, 2006, Soto's toddler son was killed. Soto represented to law enforcement and the Lucas County Coroner that his son was struck while Soto was driving an all-terrain vehicle ("ATV") and that his son died as a result. Consistent with Soto's representations to law enforcement, the coroner concluded that the child died of blunt force trauma caused by an ATV accident.

{¶3} On March 31, 2006, Soto was charged with Child Endangering in violation of R.C. 2919.22(A)/(E)(1)(c), a felony of the third degree, and Involuntary Manslaughter in violation of R.C. 2903.04(A), a felony of the first degree. It was alleged that Soto committed Involuntary Manslaughter by causing the death of his son while committing the predicate felony offense of Child Endangering.

{¶4} Subsequently, Soto entered into a negotiated plea agreement wherein he agreed to plead guilty to Child Endangering and in exchange the Involuntary Manslaughter charge was dismissed. As a result of Soto's conviction, the record indicates that Soto was sentenced to serve 5 years in prison.

{¶5} On or about July 25, 2016, Soto voluntarily appeared at the Putnam County Sheriff's Office and allegedly indicated that he wanted to provide a "truthful" account of what happened to his son. Soto told the police that he had actually beat his son to death back in 2006 and that he had staged the ATV accident scene.

{¶6} The Lucas County Coroner's original 2006 report was then reviewed by a pediatric abuse specialist who concluded that the toddler had actually died of multiple blunt force trauma due to Soto's violent actions. The expert concluded that Soto's original 2006 misrepresentations "led to the reasonably yet faulty conclusions of the Lucas County Coroner." (Doc. No. 29).

{¶7} On August 15, 2016, Soto was indicted by the Putnam County Grand Jury for Aggravated Murder in violation of R.C. 2903.01(C), an unclassified felony, Murder in violation of R.C. 2903.02(B), an unclassified felony, Felonious Assault in violation of R.C. 2903.11(A)(1), a felony of the first degree, Kidnapping in violation of R.C. 2905.01, a felony of the first degree, and Tampering with Evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree.

{¶8} On October 11, 2016, Soto filed a "Motion to Dismiss on the Grounds of Double Jeopardy." In the motion, Soto argued that in his original 2006 prosecution, a charge of Involuntary Manslaughter was dismissed when he pled guilty to Child Endangering. Soto contended that the judgment entries and

transcripts from that case did not address whether the matter would be dismissed with or without prejudice, but the "entries in the record makes one think that a change of pleas [sic] to child endangering also disposed of the involuntary manslaughter charge." (Doc. No. 28). Soto contended that Involuntary Manslaughter was a lesser included offense of both Murder and Aggravated Murder, which he argued would bar a subsequent prosecution of Soto on those charges.

{¶9} On October 18, 2016, the State filed a response. The State contended that pursuant to the United States Supreme Court's decision in *Blockburger v. United States*, 284 U.S. 299 (1932), Aggravated Murder contained different elements than Involuntary Manslaughter, which would allow multiple prosecutions. As to the Murder charge, the State argued that pursuant to *State v. Bridges*, 10th Dist. Franklin No. 14AP-602, 2015-Ohio-4480, ¶ 11, a negotiated guilty plea only barred successive prosecutions where the defendant would " ' "reasonably believe that his or her plea would bar further prosecutions for any greater offense related to the same factual scenario." ' " *Bridges citing State v. Church*, 10th Dist. Franklin No. 12AP-34, 2012-Ohio-5663, ¶8, quoting *State v. Edwards*, 8th Dist. Cuyahoga No. 94568, 2011-Ohio-95, ¶ 23.

{¶10} The State contended that because of his prior false narrative Soto could not have reasonably believed that his negotiated plea to Child Endangering would bar prosecution of subsequent homicide charges based on the truth. Further, the

State argued that subsequent prosecution on a more serious crime was not barred in a situation where the State was unable to proceed on a more serious charge because the additional facts necessary to sustain the charge had not yet occurred or had not yet been discovered despite the exercise of due diligence. *See Brown v. Ohio*, 432 U.S. 161, 169, fn. 7, 97 S.Ct. 2221, 2227 (1977).

**{¶11}** On April 13, 2017, the trial court filed its judgment entry determining Soto's motion to dismiss. The trial court found that pursuant to *Blockburger*, Felonious Assault, Kidnapping, Tampering with Evidence, and Aggravated Murder all required proof of an element not required or included in the original prosecution of Child Endangering and Involuntary Manslaughter, which would permit multiple prosecutions. As to the Murder charge, the trial court determined that Soto could not have reasonably believed that his 2006 negotiated plea based on his prior false narrative of events would bar prosecution of a purposeful homicide. Further, the trial court indicated that Involuntary Manslaughter with a Child Endangering predicate was not the same offense as Murder with a Felonious Assault predicate. Finally, the trial court determined that the facts to support the 2016 indictment could not have been discovered in the exercise of due diligence until the additional evidence was uncovered. Thus the trial court overruled Soto's motion to dismiss.

Case No. 12-17-05

{¶12} It is from this judgment that Soto appeals, asserting the following assignment of error for our review.[1]

### Assignment of Error
**The trial court erred [in] overrul[ing] Defendant's Motion to Dismiss on Double Jeopardy Grounds.**

{¶13} In Soto's assignment of error, he contends that the trial court erred by overruling his motion to dismiss on double jeopardy grounds. Specifically, Soto argues that his 2006 plea that resulted in the dismissal of the Involuntary Manslaughter charge should bar the current prosecution because Involuntary Manslaughter is a lesser included offense of Aggravated Murder and Murder. Further, Soto argues that the trial court did not support its finding that Soto could not have reasonably believed that the earlier dismissal would bar future prosecution for the death of Soto's son. Finally, Soto argues that the State did not reserve any right to bring additional charges in the original dismissal of his Involuntary Manslaughter charge.

*Standard of Review*

{¶14} Appellate courts review the denial of a motion to dismiss an indictment on the grounds of double jeopardy de novo, "because it is a pure question of law." *State v. Mutter*, 150 Ohio St.3d 429, 2017-Ohio-2928, ¶ 13, citing *State v.*

---

[1] The Supreme Court of Ohio has determined that the denial of a motion to dismiss on double jeopardy grounds is a final appealable order. *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, ¶ 61 ("We hold that an order denying a motion to dismiss on double-jeopardy grounds is a final, appealable order.")

Case No. 12-17-05

*Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 16, citing *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership,* 78 Ohio App.3d 340, 346 (2d Dist.1992).

*Relevant Authority and Analysis*

{¶15} "Where successive prosecutions are at stake, the double jeopardy guarantee serves 'a constitutional policy of finality for the defendant's benefit.' " *State v. Liberatore,* 4 Ohio St.3d 13, 14 (1983), quoting *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547 (1971). The question in this case is whether the State would violate that guarantee if it prosecuted Soto for Aggravated Murder and Murder after a charge of Involuntary Manslaughter was dismissed pursuant to a 2006 plea agreement with Soto for actions resulting in the death of his son.[2]

{¶16} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Through the Fourteenth Amendment to the United States Constitution, this protection applies to individuals prosecuted by the State of Ohio. *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 10, citing *Benton v. Maryland*, 395 U.S. 784, 786, 86 S.Ct. 2056 (1969). Similarly, the Ohio

---

[2] All of Soto's arguments on appeal pertain to the charges of Aggravated Murder and Murder. He does not appear to contend that the remaining charges against him are barred by Double Jeopardy. In fact, in his summary of the issue presented for review in his brief, Soto states the issue as "Whether the Defendant's earlier guilty plea to involuntary manslaughter barred prosecution for murder and aggravated murder 11 years later." Notably the prior guilty plea was not to involuntary manslaughter, making that an incorrect statement; however, this summary is consistent with the position that Soto raises no challenges regarding the remaining counts against him.

Constitution provides, "No person shall be twice put in jeopardy for the same offense." Ohio Constitution, Article I, Section 10. The Supreme Court of Ohio has described the protections afforded by the Ohio and United States Constitutions' Double Jeopardy Clauses as "coextensive." *Mutter*, *supra* at ¶ 15, citing *State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, ¶ 7, citing *State v. Gustafson*, 76 Ohio St.3d 425, 432 (1996).

{¶17} Principally, "The Double Jeopardy Clauses [of both Constitutions] protect against three abuses: (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.' " *Mutter* at ¶ 15 quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072 (1969), *overruled on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201 (1989).

{¶18} "In determining whether an accused is being successively prosecuted for the 'same offense,' the [Supreme Court of Ohio] * * * adopted the 'same elements' test articulated [by the Supreme Court of the United States] in *Blockburger v. United States* (1932), 284 U.S. 299, 304, 52 S.Ct. 180[.]' " *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, ¶ 18. The *Blockburger* test applies "where the same act or transaction constitutes a violation of two distinct statutory provisions" and requires the reviewing court to evaluate the elements of each statutory provision to determine "whether *each* provision requires proof of a fact

which the other does not." (Emphasis added.) *Blockburger* at 304. " 'This test focuses upon the elements of the two statutory provisions, not upon the evidence proffered in a given case.' " *Zima* at ¶ 20, quoting *State v. Thomas*, 61 Ohio St.2d 254, 259 (1980), *overruled on other grounds*, *State v. Crago*, 53 Ohio St.3d 243 (1990), syllabus. The United States Supreme Court has summarized the *Blockburger* test as an inquiry that asks "whether *each* offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." (Emphasis added.) *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849 (1993).

{¶19} In this case, Soto argues that he should not be able to be prosecuted for Aggravated Murder and Murder due to the fact that his prior 2006 plea agreement disposed of a count of Involuntary Manslaughter against him. In support of his position, Soto cites multiple cases wherein the Supreme Court of Ohio has stated that Involuntary Manslaughter is a lesser included offense of both Aggravated Murder and Murder. *See State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, ¶ 79 ("Involuntary manslaughter, R.C. 2903.04, is a lesser included offense of aggravated murder with prior calculation and design * * * and murder, R.C. 2903.02 * * * because the only distinguishing factor is the mental state involved in the act."); *State v. Thomas*, 40 Ohio St.3d 213, 216 (1988). Soto argues that because

Involuntary Manslaughter is a lesser included offense of Aggravated Murder and Murder, a subsequent prosecution on these offenses now violates double jeopardy.

{¶20} Both the Supreme Court of the United States and the Supreme Court of Ohio have addressed situations where government entities attempted to prosecute an individual for a greater offense after a defendant had been convicted of a lesser included offense. In *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221 (1977), the State of Ohio attempted to prosecute a defendant for the greater offense of Auto Theft after the defendant had pleaded guilty to the lesser included offense of Joyriding. *Brown* at 168. In *Brown*, the Supreme Court of the United States concluded that "[w]hatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense." *Id*. at 169.

{¶21} More recently, the Supreme Court of Ohio considered a situation where a defendant was prosecuted for a "misdemeanor offense that was a lesser included offense of the felony for which [he was] originally indicted." *Mutter*, *supra*, at ¶ 22. The Supreme Court of Ohio determined that "a misdemeanor conviction for a lesser included offense bars the state from indicting the same defendant for a felony that by definition included the misdemeanor offense within it as a lesser included offense, arising from the same facts." *Id*.

{¶22} Here, Soto was never *convicted* of Involuntary Manslaughter; however, he was charged with Involuntary Manslaughter in 2006 and that charge was dismissed pursuant to a plea agreement wherein Soto agreed to plead guilty to Child Endangering, the predicate offense of the Involuntary Manslaughter. Notably, the new charges against Soto, which include Aggravated Murder and Murder, were also filed after Soto served his 5-year prison sentence on the Child Endangering conviction related to the death of his son. Thus while Soto was not convicted of Involuntary Manslaughter, he was in jeopardy of being tried and convicted of Involuntary Manslaughter but-for the plea agreement, resulting in his conviction and sentence for the predicate offense of Child Endangering. Involuntary Manslaughter is a lesser included offense of Aggravated Murder and Murder, as the Supreme Court of Ohio has stated, thus it would seem that a subsequent prosecution would be barred in these circumstances.

{¶23} The dissent argues that because the Involuntary Manslaughter count in the original prosecution was dismissed pursuant to a plea agreement Double Jeopardy should not be implicated here. In support, the dissent cites language from *State v. Bonarrigo*, 62 Ohio St.2d 7, 12 (1980), related to a State's dismissal of charges *prior to there ever being a trial or conviction on any operative offense*. Such authority has no relevance here, where the sole basis for dismissal of the Involuntary Manslaughter was the conviction and served sentence on the predicate

offense to the Involuntary Manslaughter--Child Endangering. It is our view that the double jeopardy implication of a dismissal of the Involuntary Manslaughter in the context of such a plea agreement is akin to the double jeopardy protection and finality afforded to an acquittal. Under any other interpretation, and barring any special exception or reservation in the record, the State could routinely negotiate a plea agreement wherein it would dismiss the most serious charge and later, after a defendant served his sentence thinking the matter had concluded, re-indict, try, convict, and sentence him on the greater offense. There would be no finality under such a system and it would render plea agreements largely meaningless. Notably, neither of the parties raise the same argument as the dissent, and the trial court did not make a ruling on this issue either.

{¶24} Moreover, while the trial court found that under the *Blockburger* test Aggravated Murder and Murder contained additional elements that Involuntary Manslaughter did not have, *Blockburger* actually requires that *each* offense contain an element that the other does not in order for a subsequent prosecution to be permissible. The Supreme Court of Ohio has determined that when comparing elements the

> **test is not a word game to be performed by rote by matching the words chosen by the legislature to define criminal offenses. Some offenses, such as aggravated murder and murder, lend themselves to such a simple matching test; others do not. [Citations omitted] * * * The proper overall focus is on the nature and circumstances**

> **of the offenses as defined, rather than on the precise words used to define them.**

*State v. Thomas*, 40 Ohio St.3d 213, 216-217.

{¶25} Turning then to the actual elements of the crimes involved with the Supreme Court of Ohio's standards in mind, the original 2006 charge of Involuntary Manslaughter was alleged to be a violation of R.C. 2903.04(A), which reads, "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2903.04(A).[3]

{¶26} The 2016 indictment alleges one count of Aggravated Murder, which requires proof that, "No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy." R.C. 2903.01. The 2016 indictment also alleges one count of Murder in violation of R.C. 2903.02(B), which reads, "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." The offense of violence alleged in the 2016 indictment is Felonious Assault in violation of R.C.

---

[3] The felony allegedly committed was Child Endangering in violation of R.C. 2919.22(A)/(E)(1)(c), which reads, "No person, who is the parent * * * of a child * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * * If the violation * * * results in serious physical harm to the child involved, [it is] a felony of the third degree[.]"

2903.11(A)(1), which reads, "No person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn."

**{¶27}** Based on the guidance of the Supreme Court of Ohio that an elements' test is not a "rote" matching test, we cannot agree with the trial court that *both* Aggravated Murder and Involuntary Manslaughter contain elements that the other does not. While Aggravated Murder does contain the language of "prior calculation and design," which Involuntary Manslaughter does not have, the Supreme Court of Ohio has held that "[A]ggravated [M]urder with prior calculation and design, * * * is defined as [M]urder with an enhanced mental state. Thus the only distinguishing factor between R.C. 2903.01(A) [Aggravated Murder] and [I]nvoluntary [M]anslaughter is, as in the case of murder, the mental state involved." *Thomas*, 40 Ohio St.3d at 216. The Supreme Court of Ohio reasoned that "one cannot criminally cause another's death without committing an underlying felony or misdemeanor." *Id.* at 216. Put another way, under the Supreme Court of Ohio's construction that prior calculation and design is not an additional element but only an "enhancement" of the state of mind required for both homicide offenses, an Aggravated Murder could not be committed without at least committing an Involuntary Manslaughter. As a result, under this construction, Involuntary Manslaughter does not contain an "element" of the offense that is not subsumed within Aggravated Murder, even if a rote matching test of language of the statute might differ.

**{¶28}** Alternatively, the State argues that even if the offenses are considered the same under *Blockburger*, there is an exception to *Blockburger* that would allow a subsequent prosecution if the additional facts necessary to sustain a charge have not yet occurred or have not been discovered despite the exercise of due diligence. *Brown v. Ohio*, 432 U.S. 161, 169, at fn. 7. Although the trial court found this argument persuasive, we do not. Key to this exception is the "exercise of due diligence." While the State may contend that it could not have known that Soto purposely killed his son until he purportedly admitted as much in 2016, this seems to place an unlikely constitutional burden on a criminal defendant to assist the prosecution in every respect despite his right to remain silent. It also implies that the State is constitutionally entitled to rely exclusively upon a defendant's explanation or narrative in investigating a criminal offense or in determining the appropriate criminal charges in any given case.

**{¶29}** We do not believe either of these assumptions are constitutionally tenable in making a double jeopardy determination. On the contrary, regardless of a criminal defendant's narrative, it is the State's responsibility to properly and thoroughly investigate the matter in regard to making an accurate assessment of what happened, determining the appropriate charges based on those facts, and determining what, if any, plea negotiations to accept once charges have been brought.

**{¶30}** Notably, there is no evidence in the record before us, nor has the State presented any, to indicate that at the time of the original plea agreement the State reserved the right to bring additional charges related to the death of Soto's child. *See State v. Carpenter*, 68 Ohio St.3d 59, 1993-Ohio-226 ("Accordingly, we hold that the state cannot indict a defendant for murder after the court has accepted a negotiated guilty plea to a lesser offense and the victim later dies of injuries sustained in the crime, unless the state expressly reserves the right to file additional charges on the record at the time of the defendant's plea.")

**{¶31}** Regardless of the status of the record as to any reservation of rights by the State at the original plea, the trial court determined that because Soto was not forthright in confessing his true culpability in his original statement to law enforcement, he could not have reasonably believed that his 2006 negotiated plea would have barred prosecution of the subsequent charges, citing a case from the Tenth District Court of Appeals in support. *See State v. Bridges*, 10th Dist. Franklin No. 14AP-602, 2015-Ohio-4480, ¶ 11. *Bridges* is readily distinguishable from this case as the defendant in that case essentially noted on the record that he was pleading guilty to a case in municipal court specifically to avoid charges in a felony indictment that was expected to be filed any day. Moreover, the indictment in *Bridges* for the more serious charge was filed the day after the defendant's guilty

plea on the lesser charge, and the Tenth District found the timing component important.

{¶32} Furthermore, in *Bridges*, the Tenth District actually distinguished its own case in *State v. Church*, 10th Dist. Franklin No. 12AP-34, 2012-Ohio-5663, which is slightly more similar to the case *sub judice* than *Bridges*. In *Church*, the Tenth District Court of Appeals found that a defendant who pled guilty to a charge of failure to use a crosswalk in exchange for the dismissal of a possession of a controlled substance charge had a reasonable expectation, based upon his negotiated plea agreement, that he would not be subject to more serious drug charges (trafficking in marijuana) arising out of the same incident. The case *sub judice* is more similar to *Church* than *Bridges*, though both contain different factual scenarios than the case before us.

{¶33} Finally, while we may be somewhat sympathetic to the notion that Soto's conduct, which may even constitute a separate crime, should not in any way be rewarded or might even be construed as a waiver of a defendant's constitutional rights in some circumstances, as noted earlier we are not convinced that this conduct supersedes either the duty of the State to independently investigate and prosecute crime, or the Double Jeopardy rights of the defendant where, as here, he has been convicted and served his sentenced for the offense pled to in exchange for dismissing the Involuntary Manslaughter.

-17-

{¶34} Based on these circumstances and the holding of the United States Supreme Court in *Blockburger* and the Supreme Court of Ohio in *Thomas*, we find that because Involuntary Manslaughter constitutes a lesser included offense of Aggravated Murder and Murder, the principles of Double Jeopardy would prevent a subsequent prosecution of Soto for Aggravated Murder and Murder in this instance.

{¶35} In sum, it is our conclusion that it was the responsibility of the State to thoroughly and forensically investigate the matter at the outset, and to thoroughly vet Soto's story when his son first died. The State did so to the extent it was satisfied back in 2006 and brought the original charges regarding the death of Soto's child. The State then negotiated a plea agreement based on those conclusions and dismissed the homicide charge without any indication in the record as to further reservation regarding future developments. Finally, Soto then served his entire sentence emanating from that negotiated plea agreement. Under these circumstances we are compelled to find that Soto cannot now be prosecuted, convicted, and sentenced again for the death of the same child. Accordingly, for all of these reasons Soto's assignment of error is sustained.

*Conclusion*

{¶36} For the foregoing reasons the assignment of error is sustained and the judgment of the Putnam County Common Pleas Court is reversed. This cause is

remanded to the trial court for further proceedings consistent with this opinion.

***Judgment Reversed and***
***Cause Remanded***

**WILLAMOWSKI, P.J., concurs.**

**ZIMMERMAN, J., dissents.**

**{¶36}** I start my dissent noting that our record does not contain *any* facts surrounding the defendant-appellant's original plea. Soto's underlying plea to the charge of Child Endangering and the State's voluntary dismissal of the Involuntary Manslaughter charge have relevance to the proceedings before us. Specifically, did Soto plead no contest; did the State *nolle* the charge of Involuntary Manslaughter; did the negotiated plea between Soto and the State occur after commencement of a trial? These questions are unanswered.

**{¶37}** However, for purposes of my dissent, I must presume that the underlying proceedings were "regular" since a "presumption of regularity" attaches to all judicial proceedings. *See generally*, *State v. Richardson*, 3d Dist. Seneca No. 13-13-54, 13-13-55, 2014-Ohio-3541. Therefore, I will presume that Soto pled guilty to Child Endangering and the State *nolled* the Involuntary Manslaughter charge *before jeopardy attached* (i.e. prior to swearing a jury or swearing in the first witness).

{¶38} Herein, the *nolle* of the Involuntary Manslaughter count by the State neither operated as an acquittal nor prevented further prosecution of the offense. *See Bucolo v. Adkins*, 424 U.S. 641, 642, 96 S.Ct. 1086 (1976). Further, "a *nolle prosequi* dismisses the charges *without prejudice* to reindictment". *State v. Bonarrigo*, 62 Ohio St.2d 7, 12 (1980). Thus, the majority's logic (that double jeopardy applies because Soto was merely charged with Involuntary Manslaughter) is misplaced because he was not punished or convicted of that offense. Double Jeopardy "applies to both successive punishments and to successive prosecutions for the same criminal offense". *United States v. Dixon*, 509 U.S. 688, 696 (1993). Here, Soto was only punished for endangering his son, *not* for his murder. As such, and under the facts presented, jeopardy never attached in this case.

{¶39} Accordingly, I agree with the trial court's denial of Soto's motion to dismiss for different reasons, and contend that double jeopardy does not apply in this case because Soto was not convicted or punished for any offense that is a lesser included offense of the charges set forth in the new 2017 indictment.

{¶40} The *only* possible valid legal issue in this case is whether or not Soto's speedy trial rights were violated after his indictment for murder and aggravated murder charges. However, that issue is not before us.

{¶41} I therefore dissent.

**/jlr**